IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. HAGGERTY,          Case No. 95-8308-CIV-MORENO

          Plaintiff,

                              **DEFENDANT THE UPJOHN COMPANY'S**
vs.                           **MEMORANDUM IN SUPPORT OF**
                              **MOTION IN LIMINE TO EXCLUDE**
                              **MEDICAL CAUSATION OPINION**
THE UPJOHN COMPANY,           **TESTIMONY OF DEBORAH MASH, PH.D,**
                              NIGHT BOX
          Defendant.                     FILED

_____/            JUN  7 1996

                                    CARLOS JUENKE
## I.   INTRODUCTION              CLERK U.S. DC FDF MIA

          Plaintiff Michael Haggerty has alleged that he was

injured as a result of taking Halcion®, a prescription sleeping

medication manufactured by The Upjohn Company ("Upjohn") and

approved by the Food and Drug Administration ("FDA").  Plaintiff's

only expert witness on the issue of medical causation is Deborah

Mash, Ph.D., a non-physician pharmacologist.  Dr. Mash is not a

medical doctor, psychiatrist or psychologist; she has not performed

a differential diagnosis to eliminate alternative causes; she has

performed no examination of plaintiff; she has no scientifically

valid data to support a causation opinion; she has never done

research on Halcion; and she has not even read the articles and

literature on which she purports to rely.

          Upjohn seeks to exclude the causation opinion of Dr. Mash

pursuant to Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579,

113 S. Ct. 2786 (1993), because 1) her general causation opinion is

not grounded in the methods and procedures of science, 2) her

general causation testimony is not relevant, 3) her specific

causation opinion is sheer speculation based upon an inadequate

factual basis, and 4) she is not qualified to give either general causation or specific causation opinions in this case.

## II.  ARGUMENT

### A.  The Daubert Case Establishes The Method By Which Dr. Mash's Opinion On Causation Must Be Evaluated

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 2796 (1993), the United States Supreme Court instructed that the admissibility of expert testimony is to be resolved "at the outset, pursuant to [Rule] 104(a)." Courts have interpreted this instruction to require, whenever possible, pretrial proceedings to resolve objections to the reliability of proffered expert testimony.[1]

Under Daubert, as the "gatekeepers" regarding expert testimony, pursuant to Rule 702 and 104, the district courts are to admit such evidence only if it is both reliable and relevant. 113 S. Ct. at 2794-95. Under the first prong of the required analysis (the reliability prong), district courts must determine whether the expert's testimony reflects "scientific knowledge", whether her findings are "derived by the scientific method", and whether her work product amounts to "good science". 113 S. Ct. at 2795, 2797. Under the second prong, district courts must ensure that the proposed expert testimony is "relevant to the task at hand" (id. at

---

[1]   See e.g. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1318-19 n.10 (9th Cir.), cert. denied, 116 S. Ct. 189 (1995). As evidenced by Dr. Mash's admissions regarding the invalidity of her methodology to reach cause and effect conclusions, there are no disputed or contested scientific issues which need to be resolved at a factual hearing. Dr. Mash has admitted or conceded all Daubert factors.

CASE NO.  95-8308-CIV-MORENO
Page 3

2797), i.e., that it logically advances a material aspect of the proposing party's case.

        To assist the district courts' analysis under the reliability prong, the Supreme Court provided a set of <u>non-exclusive</u> factors to be considered.  <u>Id.</u> at 2796-97.  The factors are as follows:

        1.    <u>Testing.</u>  Whether the expert's theory can be, and has been, tested;

        2.    <u>Acceptance.</u>  Whether the theory technique, or methodology is generally accepted within the relevant scientific community;

        3.    <u>Peer Review.</u>  Whether the theory or technique has been subjected to peer review and publication;

        4.    <u>Rate of Error.</u>  Whether the technique or methodology has an acceptable known or potential rate of error;

        5.    <u>Standards.</u>  Whether the operation of a particular technique is controlled by adequate standards.

Courts interpreting <u>Daubert</u> subsequently have applied additional relevant "prong one" factors:

        6.    <u>Expert's Qualifications.</u>  Whether the qualifications and professional stature of the

expert witness employing the methodology confirms
or undermines its scientific validity;[2]

7.   Factual Support.  Whether the proposed testimony is
speculative and lacking in factual support.[3]

8.   Recognition   of   Methodology   in   Specialized
Scientific Literature.  Absent publication of her
own   methodology,   can   the   expert   cite   any
specialized scientific literature which endorses
use of the methodology?[4]

9.   Non-Judicial Use of Methodology.  Has the expert
used the methodology outside the courtroom?  Does
the expert use the same methodology in a peer-
reviewed   scientific   context   as   she   does   in
litigation?[5]

To   satisfy   the   relevance   prong,   the   Supreme   Court
stressed the importance of the "fit" between the testimony and the
issue in the case.   113 S. Ct. at 2796.   On remand, the Ninth

---

[2]   In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717 (3rd Cir. 1994), cert. denied, 115 S. Ct. 1253
(1995); Wade-Greaux v. Whitehall Laboratories, Inc., 874 F. Supp. 1441, 1481 (D.V.I. 1994); Wilson
v. City of Chicago, 6 F.3d 1233 (7th Cir. 1993); United States v. Jones, 17 F.3d 397 (9th Cir.
1994).

[3]   See e.g. Anderson v. The National Railroad Passenger Corp., 866 F. Supp. 937 (E.D. Va. 1994), aff'd,
74 F.3d 1230 (4th Cir. 1995).

[4]   Wade-Greaux v. Whitehall Laboratories, 874 F. Supp. 1441 (D.V.I. 1994); United States v. Downing,
734 F.2d 1224, 1238-39; DeLuca v. Merrell Dow Pharmaceuticals, 791 F. Supp. 1042, 1056 ((D.N.J.
1992), aff'd, 6 F.3d 778 (3d Cir. 1993).

[5]   Reynard v. NEC Corp., 887 F. Supp. 1500, 1507 (M.D. Fla. 1995); Washington v. Vogel, 880 F. Supp.
1545, 1548 (M.D. Fla. 1995).

Circuit in <u>Daubert</u> stated:  "Federal judges must therefore exclude
proffered scientific evidence under Rules 702 and 403 unless they
are convinced that it speaks clearly and directly to an issue in
dispute in the case, and that it will not mislead the jury."   43
F.3d at 1321 n.17.

### B.   Dr. Mash's Theory And Methodology Relating To Causation Are Not Grounded In Science

Under the first <u>Daubert</u> prong of reliability, this Court
must determine whether Dr. Mash's testimony reflects "scientific
knowledge," whether her findings are "derived by the scientific
method" and whether the work product amounts to "good science."
113 S. Ct. at 2795, 2797.  On remand, the Ninth Circuit in <u>Daubert</u>
made it clear that

> "something doesn't become 'scientific
> knowledge' just because it's uttered by a
> scientist; nor can an expert's self serving
> assertion that her conclusions were 'derived
> by the scientific method' be deemed
> conclusive, else the Supreme Court's opinion
> could have ended with footnote two."

<u>Id.</u>, 43 F.3d at 1315-16.

Dr. Mash must demonstrate <u>general</u> causation (whether
exposure to Halcion <u>can</u> cause the type of injury alleged) before
she can offer an opinion on <u>specific</u> causation (that Halcion <u>did</u>
cause injury to plaintiff in this case).  <u>In re Paoli R.R. Yard PCB
Litigation</u>, 35 F.3d 717 (3d Cir. 1994), <u>cert. denied</u>, 115
S. Ct. 1253(1995); <u>Wade-Greaux v. Whitehall Laboratories, Inc.</u>,
874 F.Supp. 1441 (D.V.I. 1994).

If the opinion is not based on independent research, and Dr. Mash's causation opinion is not, the proponent must come forward with objective, verifiable evidence that the opinion is based on "scientifically valid principles."  Id. at 1317-18.  Two principal ways the proponent may show that the evidence satisfies the reliability prong are by establishing (1) that the expert's methodology has been subject to peer review, or 2) that the expert's methodology and opinion grows out of pre-litigation research.  Id.  Where such evidence is unavailable,

> the expert must explain precisely how [she] went about reaching [her] conclusions and point to some objective source -- a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like -- to show that [she has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.

Id.

A review of the methods and theory underlying Dr. Mash's causation opinion reveals obvious and fatal flaws.  No epidemiologic data, no scientist, no textbook and no scientific organization supports her theories.  Her theories and causation methodology have not been subjected to peer review.  She is utterly unfamiliar with existing clinical and epidemiologic research and has failed to consider enormous amounts of existing, relevant data. The primary data she used to form her causation opinion -- "spontaneous reports" -- are deemed by both her and the scientific community to be unusable for this purpose.

1.   **Dr. Mash Admits That Her Methodology Cannot Be
Utilized To Arrive At Cause And Effect
Determinations**

In her deposition Dr. Mash testified to the
scientifically appropriate methodology to reach causal conclusions,
but admitted that she did not utilize that method.  She testified
about the methodology she did utilize, but admitted that it could
not produce a scientifically valid conclusion on cause and effect.

Dr. Mash has admitted that drug experience reports,
spontaneous reporting system (SRS) data, anecdotal case reports,
animal studies and the other sources upon which she relies can be
used to generated hypotheses but cannot be used to arrive at
scientifically valid conclusions regarding cause and effect, i.e.,
whether a drug can cause a particular adverse event in humans.
Deposition of Deborah A. Mash, Ph.D. (hereinafter "Mash Depo."),
pp., 122-125, 129, 134, 220, Ex. "A".

According to Dr. Mash, a hypothesis is a statement of
possibility to be answered or confirmed only by gathering data.  By
definition, according to Dr. Mash, a hypothesis is something not
yet proven.  Mash Depo., p. 337, Ex. "A".

As if to underscore that critical admission, Dr. Mash has
testified that cause and effect is not the issue addressed by her
methodology in this case.

> Q.   "Have you ever heard from a speaker,
> a presenter, a question from the
> floor from any medical meeting or
> scientific meeting you ever attended
> where the speaker or presenter ever

said, "It is scientifically valid to use Spontaneous Reporting System data and case reports and animal studies in mice and rats to come to cause and effect conclusions, that is, that a drug does cause a certain event in humans?  Ever hear anybody say that?

A.   Who cares?

Q.   I care.  Have you?

A.   Cause and effect is not the issue.

Q.   It is the issue in this case, ma'am.

A.   No.  It is not.

Mash Depo., p. 219, Ex. "A".

Dr. Mash has further admitted that a scientifically valid conclusion regarding cause and effect can be made only with supporting data from controlled clinical trials or structured epidemiology studies.  Mash Depo., pp. 125, 131, 273, Ex. "A".  Dr. Mash conceded that there are no controlled clinical trials or epidemiological studies on Halcion which show a statistically significant association between taking Halcion and any of the behavioral and psychiatric events alleged to have been caused in plaintiff.  Mash Depo., pp. 89-91, 93-94, 268, Ex. "A".

Dr. Mash has admitted that the way to test whether Halcion causes adverse events like those alleged by plaintiff is to conduct large scale epidemiological studies, but she admits that she has reviewed no such studies and knows of none which show that taking Halcion is even associated with the adverse events alleged

by plaintiff.   Mash Depo., pp. 90-92, 94, 268., Ex. "A"; see Rothschild affidavit, paragraph 12, Ex. "B".

### 2.   Dr. Mash's Methodology fails the Daubert Analysis

#### a.   Dr. Mash's Methodology Has Not Been Tested

Dr. Mash freely admits that she has done nothing to test her methodology (". . . no, I haven't tested my opinions.")  Mash Depo., p. 214, Ex. "A".

Dr. Mash concedes that she has never administered Halcion to any human being in a scientific setting.   She has never designed, conducted or participated in a clinical study involving Halcion, or any other benzodiazepine.   She has conducted no epidemiologic research on Halcion or benzodiazepines.  She has not reviewed the clinical or epidemiologic research done on Halcion by others.

#### b.   There Is No General Acceptance Or Support For Dr. Mash's Causation Methodology In The Scientific Community

Dr. Mash admits that the generally accepted view in the scientific community is that her methodology can generate hypotheses about causation but cannot be used to arrive at cause and effect determinations.  Mash Depo., pp. 222-23, Ex. "A".

Dr. Mash knows of no author in a scientific journal or speaker at a scientific meeting who, based upon Dr. Mash's methodology and analysis, has stated that Halcion is capable of causing any of plaintiff's alleged injuries.  Mash Depo., pp. 217-20, Ex. "A".

Dr. Mash concedes that the generally accepted view in the scientific community is that spontaneous and anecdotal reports of adverse events cannot be used to determine causality and that a scientifically valid determination of cause and effect depends upon controlled clinical trials and epidemiological studies. Mash Depo., pp. 122-25, 133, Ex. "A". The Affidavit of Dr. Anthony Rothschild of Harvard Medical School, whose reputation in the field Dr. Mash describes as "stellar," Mash Depo., pp. 42-43, Ex. "A", establishes that the generally accepted method to determine causality is through controlled clinical trials and epidemiology studies. Rothschild Affidavit, paragraph 12, Ex. "B".

### c.    Dr. Mash's Methodology Has Not Been Subjected To Peer Review

Dr. Mash concedes that she has never subjected her causation theory or methodology to peer review. Mash Depo., p. 160, Ex. "A". She has never published her causation methodology or stood up in front of a scientific audience and, based upon the analysis and methodology utilized in this case, stated that Halcion causes the adverse behaviors alleged in this case.

### d.    Dr. Mash's Causation Methodology Has No Known Or Acceptable Error Rate

Dr. Mash's causation methodology relies in large part on spontaneous drug experience reports, SRS data and anecdotal case reports in the literature. Dr. Mash admits, however, to the significant but unquantifiable error contained in such data because of incomplete data, incomplete reporting and non-causation related

bias and variables which affect the numbers of such reports.  Mash
Depo., pp. 120-21, 179-80, 224-25, Ex. "A".  Because of these
limitations, Dr. Mash's methodology has an unknown error rate, Mash
Depo., pp. 224-25, Ex. "A", which means it produces a wrong result
an unknown percentage of the time.  Such an unknown error rate
could be 1% and could be 99%.  Dr. Mash cannot quantify the error
rate of her methodology.

Spontaneous drug experience reports and the SRS is a
hypothesis generating system that indicates only a temporal
relationship between the drug and the event.  Use of SRS data to
draw inferences about a causal relationship between a drug and an
event is scientifically invalid.  "Despite their usefulness, one or
even many reports of adverse reactions often do not provide
sufficient information to confirm that a drug caused a reaction."[6]

Because of the inherent unreliability of such data,
courts facing this issue in prior Halcion cases have held that drug
experience reports and SRS data are not the type of data reasonably
relied upon by experts in the field in making cause and effect
determinations and, therefore, could not be relied upon by experts

---

[6]   Faich, G.A., N. Eng. J. Med. 314(24):1589-1592 (1986), attached as Exhibit D.  See also Stang, P.E.,
Fox, J.L., "Adverse Drug Events and the Freedom of Information Act:  An Apple in Eden," Annals of
Pharmacotherapy, 26:238-243 (1992), attached as Exhibit E.

It is tempting to believe a system that collects adverse drug-event reports from both
manufacturers and the medical and non-medical public would be useful in all kinds of data
analysis of such events.  Unfortunately, where there are data, especially data of
commercial value or having potential health impact, some people will use the data for
purposes other than those that are intended and proper...  The use of these data for
purposes other than signal detection is critically faulted, a clear conclusion if one
appreciates the true nature of the reports and the system.

in the case.  <u>Sprague v. The Upjohn Co.</u>, CA No. 91-40035-NMG (D.

Mass. May 13, 1994) ("DER and SRS data is not a scientifically

valid or accepted methodology for making a determination of

causation or relative drug safety."), attached as Ex. "M"; <u>Lam v.

The Upjohn Co.</u>, CA No. 94-0033-H (D. Va. April 21, 1995), attached

as Ex. "N"; <u>Beer v. The Upjohn Co.</u>, CV189-5420 (Cir. Ct. Mo. Dec.

12, 1994), attached as Ex. "O".[7]

> **e.    There is No Data to Support a General
> Causation Opinion and Dr. Mash's Specific
> Causation Opinion Is Speculative And Without
> Factual Support**

Armed with only professional credentials and a subjective

opinion, an expert's testimony that "it is so" is not sufficient to

make a causation opinion admissible.

> It is well established that a party may not
> avoid summary judgment on the basis of an
> expert's opinion that fails to provide
> specific facts from the record to support its
> conclusory allegations.

<u>Reynard v. NEC Corp.</u>, 887 F. Supp. 1500, 1506 (M.D. Fla. 1995)

(quoting <u>Evers v. General Motors Corp.</u>, 770 F.2d 984, 985 (11th

---

[7]    <u>See also</u> <u>DeLuca v. Merrell Dow Pharmaceuticals, Inc.</u> (D.N.J. 1992) 791 F. Supp. 1042, 1050-51, <u>aff'd</u>
(3rd Cir. 1993) 6 F.3d 778, <u>cert. denied</u>, (1994) 126 L. Ed. 2d 658 (". . . DERs are not the type of
data that are reasonably relied upon by experts in the field of epidemiology and public health to
make a determination of the causal relationship between a given substance and human defects.");
<u>Richardson v. Richardson-Merrell, Inc.</u> (D.C. Cir. 1986) 649 F. Supp. 799, 801 n.5, <u>aff'd</u> (D.C. Cir.
1988) 857 F.2d 823, <u>cert. denied</u>, 493 U.S. 882 (1989); <u>Wade-Greaux v. Whitehall Labs.</u>, 874 F.
Supp. 1441, 1481 (D.V.I. 1994) (DERs not of the type of data reasonably relied upon by experts in
field of epidemiology; methodology based on such data "likely to produce inaccurate and unreliable
results."); <u>Cosgrove v. Merrell Dow Pharmaceuticals, Inc.</u> (1989) 117 Idaho 470, 475-76, 788 P.2d
1293, 1298-99; <u>Casey v. Ohio Medical Prod., Inc.</u>, 1995 W.L. 91349 (N.D. Cal., Feb. 28, 1995) (case
reports in literature are not reliable scientific evidence of causation -- they simply describe a
reported event without any comparison to the rate at which the event occurs in the general
population or in a defined control group, they do not exclude potential alternative causes, they do
not explain the mechanism of causation), attached as Exhibit P.

Cir. 1985)).  <u>See</u> <u>Anderson v. Nat'l Railroad Passengers Corp.</u>, 866
F. Supp. 937, 943 (E.D. Va. 1994), <u>aff'd</u>, 74 F.3d 1230 (4th Cir.
1995) (district court specifically acknowledged its obligation to
"disregard expert opinion if it is mere speculation, not supported
by facts").

Dr. Mash cites no scientifically valid data to support a
general causation opinion regarding Halcion and the type of injury
and condition alleged by plaintiff.  Mash Depo., pp. 89-94, 268,
Ex. "A".

Dr. Mash's specific causation opinion lacks any factual
basis.  She is unaware of facts which are critical to the formation
of any non-speculative opinion on specific causation.  Dr. Mash has
never met, examined or evaluated plaintiff.  Mash Depo., p. 20,
Ex. "A".  Although Dr. Mash believes that it is important to
exclude all other causes when reaching a conclusion on causation,
Mash Depo., pp. 334-35, Ex. "A", she has not performed a
differential diagnosis to exclude other possible alternative
causes.  Mash Depo., pp. 135-36, Ex. "A".

For example, she admits that alcohol intoxication could
explain all of plaintiff's behaviors on April 20, 1991.  She has
not considered the causal role of any psychiatric or psychological
problem plaintiff may have, of which she is unaware.  Mash Depo.,
pp. 136, 232-34, 236, Ex. "A".  Dr. Mash was unaware of plaintiff's
multiple psychological evaluations which indicated that plaintiff
has borderline personality disorder or traits and is a risk of

unpredictable aggressive outbursts, all unrelated to his taking Halcion.

Critically, Dr. Mash is unaware of any evidence of a pattern of domestic violence and physical assault by plaintiff, when such history is apparent on the record of this case.  Mash Depo., pp. 99, 137-39, 141, Ex. "A"; see testimony of Debra Newell, Robert Critchley, Robin Beard, Paula Haggerty, Kim Critchley and Joanne Reed, Ex. "K".

Dr. Mash admits that any mechanism of action to explain how Halcion causes the alleged behaviors is unknown.  Mash Depo., pp. 207-08, Ex. "A".  Although she is willing to opine about "high incidence rates" and "increased risks" allegedly associated with Halcion, she is unable to calculate any such figures and admits that incidence rates and relative risk calculations she would make would be a guess.  Mash Depo., pp. 121-22, 232-34, Ex. "A".

Dr. Mash has not read the scientific literature upon which she says she relies, and admits that she made "assumptions" regarding the character of data contained therein.

> **f.  Dr. Mash Is Not Qualified To Testify To Medical Causation And Her Lack of Qualifications Undermine The Validity Of Her Methodology**

In Anderson v. Nat'l Railroad Passenger Corp., 866 F. Supp. 937 (E.D. Va. 1994), aff'd, 74 F.3d 1230 (4th Cir. 1995), the court applied the principles of Daubert and stated:

> [T]he expert's background must show qualification sufficient to permit expression of an opinion that is

borne of the specialized knowledge or expertise which allows the expert to give opinion evidence in the first instance.

Id., 866 F. Supp. at 943.

Even if Dr. Mash had followed the scientific method, she lacks the qualifications to apply it in this case.  She is not a medical doctor, psychiatrist or psychologist, but purports to testify on issues of medical causation and psychiatric disorders. She is not qualified to diagnose or treat any illness, mental or physical, and has never prescribed medication to any human being.

Dr. Mash has done no research on Halcion or benzodiazepines and has never evaluated a patient who was taking Halcion.  She has offered any number of speculative opinions about the properties of Halcion but has no data to back them up.  Mash Depo., pp. 47-51, Ex. A.  Mash Depo., pp. 115, 255-56, Ex. "A".

### g.    There Is No Specialized Medical Literature In Support Of The Use Of Dr. Mash's Methodology To Arrive At Cause And Effect Determination

Absent publication of her own methodology, an expert must be able to point to some recognized article, literature, or text book which endorses the methodology the expert uses.  Wade-Greaux v. Whitehall Laboratories, Inc., 874  F. Supp. 1441 (D.V.I. 1994); United States v. Downing, 753 F.2d 1224, 1238-39 (3rd Cir. 1985); DeLuca v. Merrell Dow Pharmaceuticals, 791 F.2d 1042, 1056 (D. NJ, 1992), aff'd, 6 F.3d 778 (3rd Cir. 1993).

Dr. Mash admitted that she knows of no medical or pharmacology textbook which states that it is scientifically valid

to utilize her methodology to come to cause and effect conclusions about whether or not a drug causes a certain effect in humans. Mash Depo., p. 222, Ex. "A".

During her deposition, Dr. Mash could cite to no author, scientist, or researcher anywhere in the world who had confirmed the scientific reliability of her methodology using spontaneous drug experience reports and SRS data to come to cause and effect conclusions.

**h.    Apart From This Lawsuit, Dr. Mash Has Never Used Her Methodology To Come To Cause And Effect Conclusions**

Courts must closely scrutinize an expert's opinion that has been developed solely for the purposes of litigation:

> The first consideration is whether the experts are proposing to testify about matters growing naturally out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for the purposes of testifying.

Reynard v. NEC Corp., 887 F. Supp. 1500, 1507 (M.D. Fla. 1995) (quoting Daubert, 43 F.3d at 1316).  When the methodology and opinion grows out of litigation rather than the scientist's routine work, the opinion may be considered "tainted." Washington v. Vogel, 880 F. Supp. 1545, 1548 (M.D. Fla. 1995).

Dr. Mash had never done any research with Halcion before this case.  Prior to her involvement in this case, she had never relied upon her methodology and its data to come to cause and effect determinations. Mash Depo., pp. 123, 128, 227-28., Ex. "A".

**3.    Dr. Mash's General Causation Opinion Is Not Relevant To The Issue Of Medical Causation In This Case**

**a.    There Is No Relevant Epidemiological Data To Support Dr. Mash's General Causation Opinion**

Without direct evidence of causation, statistically significant epidemiological studies are necessary and vital to proof of general causation in pharmaceutical or toxic exposure cases.[8]  Most courts have held that epidemiological studies are relevant to prove a general causal relationship only if the study result demonstrates a doubling of the relative risk, or relative risk greater than 2.0, as a result of exposure to the drug.[9]  Only if plaintiff is able to show that exposure to the drug more than doubles the risk of injury can it be said that the exposure was more likely than not the source of the injury.  DeLuca v. Merrell Dow Pharmaceuticals, Inc., 911 F.2d 941, 954-55 (3rd Cir. 1990).

Dr. Mash cannot cite any controlled clinical trial or epidemiology study on Halcion which demonstrates a relative risk greater than 2.0 for any of the behavioral and psychiatric effects which plaintiff alleged were caused by Halcion.  Mash Depo., pp. 95-97, Ex. A.   More significantly, Dr. Mash cannot cite

---

8    "Where there is no real understanding of the organic cause of the disease or defect, epidemiologic studies are of critical significance."  Richardson v. Richardson-Merrell, Inc., 857 F.2d at 831 n.59 (quoting In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1223, 1242 (E.D.N.Y. 1985), aff'd 818 F.2d 226 (2d Cir. 1987)).  See also Wade-Greaux v. Whitehall Laboratories, Inc., 874 F. Supp. 1441 (D.V.I.), aff'd, 46 F.3d 1120 (3d. Cir. 1994); Porter v. Whitehall Laboratories, Inc., 9 F.3d 607 (7th Cir. 1993); Casey v. Ohio Medical Prod., Inc., 1995 W.L. 91349 (N.D. Cal. Feb. 28, 1995); Reynaud v. Martin Marietta Corp., 749 F. Supp. 1545 (D. Col. 1990).

9    Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1320 (9th Cir. 1995); Manko v. United States, 636 F. Supp. 1419 (W.D. Mo. 1986); Marder v. G.D. Searle, 630 F. Supp. 1087 (D. Md. 1986), aff'd sub nom Wheelahan v. G.D. Searle, 814 F.2d 655 (4th Cir. 1987).

CASE NO.   95-8308-CIV-MORENO
Page 18

clinical trials or epidemiological studies which show that Halcion creates _any_ statistically significant increased risk for the conditions or behaviors alleged by plaintiff.  Mash Depo., pp. 89-94, 268, Ex. "A".

> **b.   Dr. Mash's Testimony Will Not Be Helpful To The Trier Of Fact Because Dr. Mash Has Not Reviewed Existing Epidemiological Data**

Dr. Mash testified that, to the best of her knowledge, large scale epidemiological studies on Halcion had not been done. Mash Depo., pp. 215-16, Ex. "A".  Dr. Mash further testified that if a significant body of epidemiological data did exist and Dr. Mash had not reviewed it, her opinion would then be based upon incomplete information.

As set forth in the Affidavits of Dr. Kenneth Starz and Dr. Anthony Rothschild, Ex. "B" and "C", Halcion has been studied in hundreds of controlled clinical trials, involving more than 10,000 patients taking Halcion, and at least 12 structured epidemiological studies have been conducted, involving over 89,000 patients taking Halcion.  Because Dr. Mash is unaware of and has not reviewed this body of relevant epidemiological data, her opinion on medical causation of the adverse events alleged by plaintiff could not possibly be helpful to the trier of fact and should be excluded.  See In re Paoli R.R. Yard PCB Litig., 706 F. Supp. 358, 369-70 (E.D. Pa. 1988) (court rejected plaintiff's expert as "unhelpful" under F. R. Evid. 703 and 403 where the

LAW OFFICES ANDERSON, MOSS, SHEROUSE & PETROS, P.A.
SUITE 2500 NEW WORLD TOWER, 100 NORTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33132 • TELEPHONE (305) 358-5171

witness had not reviewed the existing body of epidemiological data).

### III.   **CONCLUSION**

For all the reasons stated herein, Upjohn requests that the Court exclude the medical causation opinion of Deborah Mash, Ph.D.

Respectfully submitted,

PAUL D. SNYDER, ESQ.
ALEXANDER B. ROBB, ESQ.
SHOOK, HARDY & BACON L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, Missouri  64105-2118
Telephone:  1-816-474-6550
Facsimile:  1-816-421-5547

and

ANDERSON, MOSS, SHEROUSE
  & PETROS, P.A.
25th Floor, New World Tower
100 North Biscayne Boulevard
Miami, Florida 33132
Telephone:  1-305-358-5171
Facsimile:  1-305-358-7470

By: _____
    Thomas M. Sherouse, Esq.
    Florida Bar No.: 221295

    Co-Counsel for DEFENDANT
    THE UPJOHN COMPANY

CASE NO.   95-8308-CIV-MORENO
Page 20

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the attached **DEFENDANT THE UPJOHN COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF DEBORAH MASH, PH.D.**, was served this _____ day of June, 1996, upon the following by United States mail, first class, postage prepaid:

        James M. McCann, Jr., Esq.
        AKERMAN, SENTERFITT & EIDSON, P.A.
        Phillips Point - East Tower
        777 South Flagler Drive, Suite 900
        West Palm Beach, Florida  33401

                        Thomas M. Sherouse, Esq.
                        Attorney for Defendant

G:\CASES\CASE3\4644\SHOOK\2039.ATT