IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. HAGGERTY,

      Plaintiff,

vs.

THE UPJOHN COMPANY,

      Defendant.

_____/

Case No. 95-8308-CIV-MORENO

**DEFENDANT THE UPJOHN COMPANY'S
REPLY IN SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE MEDICAL
CAUSATION OPINION TESTIMONY
OF DEBORAH MASH, PH.D.**

COMES NOW defendant The Upjohn Company ("Upjohn") and submits this Reply

in Support of its Motion to Exclude the Medical Causation Opinion Testimony of Deborah Mash,

Ph.D.

### I.    PLAINTIFF ADMITS THAT DR. MASH'S CAUSATION OPINION FAILS VIRTUALLY ALL *DAUBERT* CRITERIA FOR ADMISSIBILITY

Plaintiff's Response to Upjohn's Motion in Limine to Exclude the Medical Causation

Opinion Testimony of Deborah Mash, Ph.D. ("Response") fails to refute, and therefore admits, each

of the following defects in Dr. Mash's methodology, which are fatal to the admission of her

scientifically unsupported medical causation opinion:

1.    Dr. Mash admitted that the generally accepted view in the scientific community is that her methodology cannot be used to reach cause and effect conclusions.  Mash Depo., pp. 222-23.

2.    Dr. Mash has never presented her opinions, conclusions or methodology to any peer group, nor has she published her theories or her methodology in any peer-reviewed journal or textbook.  Mash Depo., pp. 159-60, 216.

3.    Dr. Mash is not aware of any speaker, author, or scientist who has ever adopted her methodology, or presented it at any symposium or other gathering of scientists.  Similarly, she is not aware of any author in any medical textbook or peer review journal who has ever stated that her methodology can be used to arrive at cause and effect conclusion.  Mash Depo., pp. 217-20, 222.

4.    Dr. Mash has never tested her opinion or methodology.  Mash Depo., p. 214.

5.    Dr. Mash's methodology does not have a known or calculable error rate.  Mash Depo., pp. 120-21, 224-25.

6.      Prior to this case, Dr. Mash has never used her methodology to reach a cause and effect conclusion regarding any drug or effect. Her opinions grow out of this litigation, rather than her previous work or research. Mash Depo., pp. 227-28.

7.      They way to test whether Halcion causes the events Dr. Mash attributes to Halcion is large scale epidemiological studies. Mash Depo., p. 216. Dr. Mash is not aware of any epidemiological study that demonstrates that Halcion has a statistically significant association with the behavioral and psychiatric events alleged by plaintiff. Mash Depo., pp. 90, 92-94, 268. She knows of no scientifically valid data which shows that people taking Halcion have any different incidence (frequency of occurrence) for these events than the general population. Mash Depo. pp. 257-59.

8.      Dr. Mash has never reviewed or read any research study or article or any clinical trial or epidemiology study regarding Halcion. Mash Depo., pp. 66-67, 93, 161, 215-16. She is not aware of how many such trials and studies exist. Mash Depo., pp. 70-71.

9.      Dr. Mash has never actually read any animal studies involving Halcion or benzodiazepines. Mash Depo., p. 189.

10.     There is no known causal mechanism that explains how Halcion causes the effects Dr. Mash attributes to it. Mash Depo., pp. 206-08.

11.     Dr. Mash is not aware of plaintiff's medical, psychiatric and psychological history and is not aware of the repeatedly confirmed evidence of plaintiff's pre-Halcion violence and substance abuse. Mash Depo., pp. 99, 137-39, 141. She did not perform a differential diagnosis on plaintiff and has not excluded other potential causes for his behavior, including a psychiatric diagnosis or the effect of alcohol. Mash Depo., p. 136. All of plaintiff's behavior and symptoms could have been produced by alcohol intoxication. Mash Depo. pp. 232-34.

## II.      THE ERRONEOUS FACTUAL ASSERTIONS IN PLAINTIFF'S RESPONSE DO NOT SUPPORT THE ADMISSIBILITY OF DR. MASH'S OPINIONS

To the extent that plaintiff attempts to advocate a factual basis to support Dr. Mash's

causation opinion, his Response contains erroneous "facts":

| "Facts" in Plaintiff's Response | Facts Contained in the Record |
|---|---|
| Dr. Mash relied upon published clinical and epidemiological studies as part of her methodology to formulate her causation opinion. Response, p. 4. | Dr. Mash admitted that she has never read any clinical trial or epidemiological study data or results regarding Halcion. Mash Depo., pp. 66-67, 93, 161, 215-16.[1] |

---

1.      Human epidemiological studies are the primary, generally accepted methodology to demonstrate a causal relation between an exposure (e.g., exposure to a drug) and a disease. E.g., Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307 (5th Cir. 1989); Thomas v. Hoffman LaRoche, Inc., 731 F.
(continued...)

| "Facts" in Plaintiff's Response | Facts Contained in the Record |
|---|---|
| Dr. Mash relies on clinical case reports to formulate her causation opinion. Response, p. 4. | According to Dr. Mash, clinical case reports are not and cannot be used to make cause and effect determinations. Mash Depo., pp. 124-25.[2] |
| Dr. Mash relies on animal studies to formulate her causation opinion. Response, p. 4. | Dr. Mash does not have animal studies with Halcion to support her opinion and has never read any animal study regarding Halcion: "As you sit here, you haven't read those, have you?   A: "No . . . I would, if the case proceeds, go back and try to look at some of those species data from the animals." Mash Depo., p. 189.[3] |
| Dr. Mash relies on medical textbooks to formulate her causation opinion. Response, p. 4. | Dr. Mash has never seen any scientific, medical or pharmacological textbook which states that her methodology is a scientifically valid way to come to cause and effect conclusions.   Mash Depo., p. 222. |
| Dr. Mash relies on adverse reaction reports to formulate her causation opinion. Response, p. 4. | According to Dr. Mash, adverse reaction reports (spontaneous reporting system data) cannot be used to come to a scientifically valid conclusion about cause and effect. Mash Depo. p. 122.[4] |
| Dr. Mash relies upon the "chemical characteristics and properties" of Halcion to formulate her opinion that long-term use of Halcion creates a gradual "kindling" effect resulting in psychotic adverse reactions. Response, pp. 4, 11. | Dr. Mash knows of no scientific data which shows that Halcion creates an increased risk of such reactions because of a cumulative "kindling" effect or that "there is such a thing as a kindling phenomena in human beings taking Halcion." Mash Depo., pp. 237, 336 (p. 237 of Mash Depo. attached hereto as Exhibit A.).[5] |

---

1.(...continued)
      Supp. 224 (N.D. Miss. 1989), aff'd, 949 F.2d 806 (5th Cir. 1992).

2.      Clinical case reports are not relevant, scientifically valid evidence on the issue of causation. Casey v. Ohio Medical Products, 877 F. Supp. 1380 (N.D. Cal. 1995).

3.      Animal studies are of little utility in predicting results in man. Richardson v. Richardson-Merrell, Inc., 857 F.2d 823 (D.C. Cir. 1988).

4.      Anecdotal drug experience reports or spontaneous adverse reaction reports are not reliable and thus not the type of the evidence relied upon by experts in the medical and scientific field on the issue of causation. E.g., Richardson v. Richardson-Merrell, Inc., 649 F. Supp. 799 (D.D.C. 1986), aff'd, 857 F.2d 823 (D.C. Cir. 1988); DeLuca v. Merrell Dow Pharmaceutical, Inc., 791 F. Supp. 1042 (D.N.J. 1992).

5.      Chemical structure analysis may provide a "clue" to a possible result, bit is of limited value in a cause
                              (continued...)

| "Facts" in Plaintiff's Response | Facts Contained in the Record |
|---|---|
| Dr. Mash relies on "[s]tudies and abstracts by other experts in the field" including Dr. Kales, a study by Barash and Wysowski and a petition filed with the FDA by the "public interest" group Public Citizen. Response, pp. 4-5. | Dr. Mash has not read the original materials cited in Dr. Kales' correspondence, Mash Depo. pp. 187-88; the Barash and Wysowski article reports spontaneous medical events (SRS data) which cannot be used to come to valid scientific conclusions of cause and effect and its authors make no cause and effect conclusions, Mash Depo. pp. 122-23, 178, 219 (p.178 attached hereto as Ex. A); Dr. Mash has never read the sources cited in the Public Citizen correspondence -- according to her, it is not scientific data and cannot be used to make determinations about cause and effect. Mash Depo., pp. 128-29. |
| Halcion has not been the subject of numerous or substantial studies. Response, p. 5. | More than 400 controlled clinical trials (10,000 patients taking Halcion) and at least 12 large-scale epidemiological studies (more than 89,000 patients taking Halcion) have been performed with Halcion.  Starz Affidavit, Exhibit B to Upjohn's Motion;  Rothschild Affidavit, Exhibit C to Upjohn's Motion; Supplemental Starz Affidavit, attached hereto as Exhibit B.  Reports of these studies are located in the New Drug Application for Halcion (which plaintiff's counsel has had the opportunity to inspect but has not inspected) and the published medical literature. |
| ". . . Dr. Mash turned to the other sources of available information to form and test her opinions." Response, p. 6. | Dr. Mash has never tested any portion of her opinions or methodology. ". . . no, I haven't tested my opinions." Mash Depo., p. 214. |
| "Dr. Mash is an expert on drug interaction with central nervous system receptors, she has studied benzodiazepines as a class and Halcion as a member of that drug class and its interaction upon central nervous system receptors." Response, p. 13. | Dr. Mash did not know whether Halcion could be distinguished from other benzodiazepines, she "suspected" there was, but could not cite, data which shows that Halcion has a different clinical effect than other benzodiazepines, and she was "not certain yet" whether Halcion had different secondary effects than other benzodiazepines. She could cite or refer to no scientific data to support any of these propositions. Mash Depo., pp. 47-51. |

---

5.(...continued)
    and effect analysis.  Richardson v. Richardson-Merrell, Inc. 857 F.2d 823 (D.C. 1988).

III.     **ARGUMENT**

     A.     **The FDA Task Force Report Appended to Plaintiff's**
           **Response Does Not Support  Dr.  Mash's Testimony.**

     In his Response, plaintiff makes repeated citation to an FDA Task Force Report, appended to his Response as Exhibit B.  The only question placed at issue by Upjohn's motion in limine is whether Dr. Mash's opinion and methodology on medical causation are scientifically reliable and amount to "good science" under <u>Daubert</u>.

     The Task Force Report speaks to that issue  only in the following respects:

1.     The Task Force Report provides no support for the admissibility of Dr. Mash's medical causation methodology.  Nowhere does the Task Force Report state or imply that scientifically valid cause and effect determinations can be made utilizing the data or research methods employed by Dr. Mash.

2.     The Task Force Report confirms the FDA's position that spontaneous adverse event reports (SRS data) cannot be used to come to cause and effect conclusions ("cannot be used to calculate incidence or estimates of drug risk. . . .  Comparisons of drug safety cannot be made from these data").  Task Force Report, p. 15.

3.     Far from confirming or supplying scientific evidence that Halcion can cause, and did cause in Michael Haggerty, a combination of hallucinations, aggression, paranoia, agitated delirium, hostility, anxiety and suicidal behavior, the Task Force Report comes to only two conclusions about Halcion from all data reviewed:

     a.     "The Task Force concludes, based on the data reviewed to date, that Halcion is effective in the treatment of insomnia at doses and durations currently recommended in the labeling."  Task Force Report, p. 33.

     b.     "The Task Force concludes that the information about Halcion's safety, as described [in the report], suggests that Halcion is safe when prescribed according to the current labeling." Task Force Report, pp. 35-36.

     Apart from the issues listed above, the Task Force Report is not relevant to any consideration of Dr. Mash's methodology on the medical causation issue.

**B.      Plaintiff Has Misconstrued** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

Plaintiff argues that Dr. Mash's methodology is "stronger" than that of the experts at issue in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993), Response, p. 4, and, because the Supreme Court reversed the decision excluding those witnesses, Dr. Mash's causation opinion ought to be admitted. The Supreme Court did not find that the <u>Daubert</u> experts should be allowed to testify, but rather that the standard used to test the admissibility of their opinions is that provided by the Federal Rules of Evidence, as interpreted in <u>Daubert</u>. On remand, the Ninth Circuit held that the <u>Daubert</u> experts' testimony was inadmissible. "One very significant fact" considered by the Ninth Circuit was that their opinions were formed, not as the natural and direct result of independent research, but rather for the explicit purposes of the litigation. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 43 F.3d 1311, 1317 (9th Cir. 1995). On this point plaintiff is correct -- Dr. Mash's causation opinion is the equivalent of the excluded opinions of the <u>Daubert</u> experts: she also formed her causation opinion strictly for the purpose of this lawsuit.

**C.      The Cases Cited in Plaintiff's Response Do Not Support the Admission Of Dr. Mash's Opinion and Methodology.**

Plaintiff attempts to excuse Dr. Mash's lack of valid scientific support by citing <u>Wells v. Ortho Pharmaceutical Corp.</u>, 788 F.2d 741 (11th Cir. 1986). In that pre-<u>Daubert</u> case, the court noted that the experts were "well qualified," board-certified medical doctors who had performed personal evaluations of the injured plaintiff and that the plaintiffs had presented several epidemiological studies which supported their experts' opinions. 788 F.2d at 744. Contrary to plaintiff's argument, <u>Wells</u> did not sanction the admissibility of subjective opinion unsupported by medical or scientific data: "As long as the basic methodology employed to reach [the expert's] conclusion is sound, <u>such as use of tissue samples, standard tests and patient examination,</u> products

liability law does not preclude recovery until a 'statistically significant' number of people have been injured. . . ." 788 F.2d at 745 (emphasis added). Dr. Mash's causation opinion, which lacks support of any medical or scientific data, does not compare well to opinions of medical doctors in <u>Wells</u> who took and analyzed tissue samples, performed standard tests on these samples and actually examined the patient in a clinical setting. <u>Wells</u> demonstrates some of the things a medical expert can do to support an admissible causation opinion. Dr. Mash, who is not a medical doctor, did none of these things.[6]

Similarly, <u>Bowers v. Northern Telecom, Inc.</u>, 905 F. Supp. 1004 (N.D. Fla. 1995) does not support the admission of Dr. Mash's testimony. The experts in <u>Bowers</u> were offered solely on the issue of <u>general</u> causation, <u>i.e.</u>, the general association between the product at issue and the type of injury claimed. The court specifically noted, however, that these non-physician witnesses were <u>unqualified</u> to diagnose the plaintiffs' specific injuries, and that any such testimony may be excluded at trial. 905 F. Supp. at 1009. Dr. Mash is offered as plaintiff's only expert on general <u>and</u> specific causation. She has no medical or scientific data -- and no clinical experience -- to support a general causation opinion. She is no more qualified to perform a diagnosis of plaintiff's specific injuries and testify as to specific medical causation than were the ergonomic experts in <u>Bowers.</u>

Finally, plaintiff asserts that <u>Benedi v. McNeil-P.P.C., Inc.</u>, 66 F.3d 1378 (4th Cir. 1995) stands for the proposition that an expert in a pharmaceutical case does not need epidemiology to support her opinion. Although there is substantial authority that evidence from human epidemiological studies is necessary to an opinion of general causation in a case of this type,[7]

---

6.     <u>See also Joiner v. General Electric Co.</u>, 78 F.3d 524, 531 (11th Cir. 1996) (experts were medical doctors who performed a physical exam of plaintiff, were familiar with the medical literature in the specific field, relied upon human epidemiological studies and performed a differential diagnosis to eliminate other possible causes of plaintiff's cancer).

7.     <u>E.g.</u>, <u>Richardson v. Richardson-Merrell, Inc.</u>, 857 F.2d 823 (D.C. Cir. 1988); <u>Porter v. Whitehall Laboratories, Inc.</u>, 9 F.3d 607 (7th Cir. 1993).

LAW OFFICES ANDERSON, MOSS, SHEROUSE & PETROS, P.A.

SUITE 2500 NEW WORLD TOWER, 100 NORTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33132 · TELEPHONE (305) 358·5171

Upjohn's Motion in Limine does not rely on the proposition that epidemiological evidence is absolutely required. Where valid science such as human epidemiological studies is claimed to be lacking, the expert must be able to adequately support her methodology and opinions with other valid science. In <u>Benedi</u>, the experts carried this burden, relying upon microscopic tissue examination, blood analysis, the plaintiff's ingestion history, liver enzyme tests, and elimination of alternative causes by liver examination. The non-physician witnesses also supported their opinions, relying upon medical history, personal examinations, laboratory and pathology data, and personal study of peer-reviewed literature. The court concluded "[w]e will not declare such methodologies invalid and unreliable in light of the medical community's daily use of the same methodologies in diagnosing patients." 66 F.3d at 1384. By contrast, no doctor, scientist or researcher, including Dr. Mash, has ever used Dr. Mash's methodology to reach cause and effect conclusions. Dr. Mash did not rely on any of the data sources noted in <u>Benedi</u>; the case marks the contrast between reliable scientific methodology and the methodology used by Dr. Mash.

### D.   Criticism of Existing Scientific Data Does Not Establish Causation

Plaintiff argues both that controlled clinical trial and epidemiological data do not exist, Response, p. 5, and that some studies on Halcion conducted by Upjohn and others have been subject to criticism. Response, pp. 5-7. It should go without saying, as a matter of logic and common sense, that an expert's criticism of the number or details of existing studies does <u>nothing</u> to support affirmatively a scientifically valid causation opinion. <u>See Conde v. Velsicol Chemical Corp.</u>, 24 F.3d 809 (6th Cir. 1994).

The relevant conclusions regarding the existence and quality of valid scientific data regarding Dr. Mash's opinion and methodology are two:

1.    Dr. Mash has reviewed none of the substantial existing data from Halcion controlled clinical trials and epidemiological studies; and

LAW OFFICES ANDERSON, MOSS, SHEROUSE & PETROS, P.A.
SUITE 2500 NEW WORLD TOWER, 100 NORTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33132 · TELEPHONE (305) 358-5171

2.    There is no valid scientific data from such studies which support Dr. Mash's causation opinion.

**E.    Dr. Mash Has offered Only Subjective Opinions, Unsupported by Any Scientific Data or Research.**

At numerous points in her deposition, Dr. Mash testified that she could not provide citation to scientific data because she had "not yet" reviewed the relevant literature but was intending to do so at some point in the future. She "suspected" that there was some scientific literature to support this or that point, but had not read or reviewed it herself. The Eleventh Circuit has clearly stated that a witness who forms an opinion before research is undertaken places in issue his or her objectivity which is necessary to obtaining a valid scientific result. Perry v. United States, 755 F.2d 888 (11th Cir. 1985). See also Claar v. Burlington Northern R.R. Co., 1994 WL 362815 (9th Cir. 1994).

At the start of her deposition, Dr. Mash testified that her report, which was identified as a deposition exhibit, contained the substance of her opinions in this case. Mash Depo., pp. 29-30. (Attached hereto as Exhibit A). Dr. Mash also testified that she had undertaken some medical literature research and had a computer printout of the titles of some medical articles, but she had not yet obtained copies of them and had certainly not read them, other than reading their titles on the printout. Mash Depo., pp. 17-18 . As noted above, Dr. Mash candidly admitted that she has never read any research study or article on Halcion and has never reviewed any clinical trial or epidemiological study on Halcion. Mash Depo., pp. 66-67, 93, 161, 215-16. Thus, Dr. Mash has placed her objectivity at issue.

There is no question that Dr. Mash is a qualified scientist in her own field of specialization, which relates to cocaine addiction. There is also no question that she is not qualified to testify regarding the issues of general or specific causation of plaintiff's psychiatric condition and of plaintiff's behavior on April 20, 1991. No doubt, she has a subjective opinion on that issue, but

LAW OFFICES ANDERSON, MOSS, SHEROUSE & PETROS, P.A.
SUITE 2500 NEW WORLD TOWER, 100 NORTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33132 • TELEPHONE (305) 358-5171

has no scientific basis. As the Eleventh Circuit noted in <u>Joiner v. General Electric Co.</u>, 78 F.3d 524, 529-30 (11th Cir. 1996), the trial court's role in utilizing the <u>Daubert</u> criteria is to exclude "unsupported speculation" from the jury's consideration. A candid assessment of Dr. Mash's methodology, which includes a complete lack of valid scientific data to support her subjective opinions, compels the conclusion that her causation opinions should be excluded as "unsupported speculation."

### IV.       CONCLUSION

For the reasons stated herein and more fully explained in Upjohn's Motion, this Court should grant Upjohn's Motion in Limine to Exclude the Opinion Testimony of Deborah Mash., Ph.D.

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail and via facsimile this _____ day of July, 1996, to: **JAMES M. MCCANN, JR., ESQUIRE**, Akerman, Senterfitt & Eidson, P.A., Phillips Point East Tower, 777 South Flagler Drive, Suite 900 West Palm Beach, Florida 33401; **ANDREW SEE, ESQ., PAUL D. SNYDER, ESQ., ALEXANDER B. ROBB, ESQ.**, SHOOK, HARDY & BACON L.L.P., One Kansas City Place, 1200 Main Street, Kansas City, Missouri 64105-2118.

ANDERSON, MOSS, SHEROUSE
& PETROS, P.A.
25th Floor, New World Tower
100 North Biscayne Boulevard
Miami, Florida 33132
Telephone: 1-305-358-5171
Facsimile: 1-305-358-7470

By: _____
Thomas M. Sherouse, Esq.
Florida Bar No.: 221295

Counsel for DEFENDANT
THE UPJOHN COMPANY